IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08CV140-V-2
(5:05CR9-16-V)

| | |
|---|---|
| **KENYA LASHAN MARTIN,** )<br>)<br>      **Petitioner,** )<br>)<br>      v. )<br>)<br>**UNITED STATES OF AMERICA,** )<br>)<br>      **Respondent.** )<br>_____) | **O R D E R** |

    **THIS MATTER** is before the Court on initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 and on her Motion for Extension of Time to file a supporting memorandum, both filed November 21, 2008[1] (Document ## 1 and 2). For the reasons stated herein, Petitioner's Motion for

---

[1] On August 11, 2008, Petitioner filed a form-Motion to Vacate, merely outlining two proposed claims, and she filed a Motion for Extension of time seeking additional time to submit a supporting memorandum for her claims. (Case No. 5:08CV94-V, document ## 1 and 2). However, this Court determined both that Petitioner mistakenly had calculated her one-year limitations deadline as having expired on July 30, 2008, and that such period would not expire until October 28, 2008; therefore, the Court entered an Order dismissing the Motion to Vacate without prejudice to Petitioner's right to re-file a complete § 2255 motion before the deadline. (Case No. 5:08CV94, document # 3). Such Order also dismissed as moot Petitioner's Motion for an Extension of Time. Although Petitioner timely attempted to re-file her §2255 Motion and Memorandum by placing those documents in a correctly addressed envelope and delivering it to prison officials for mailing to this Court, the United States Postal Service inexplicably delivered the envelope to a North Carolina Court. As such, the envelope was returned to Petitioner, thereby requiring her to re-send it to this Court. In any case, Petitioner has met her obligation under the "mailbox rule" announced in Houston v. Lack, 487 U.S. 266 (1988); therefore, her Motion to Vacate will be deemed timely filed. Additionally, because Petitioner's Motion was accompanied on its extended journey to this Court by her supporting Memorandum, she will not be required to secure leave of this Court in order to file that Memorandum.

1

an Extension of Time will be dismissed as moot; and her Motion to Vacate will be denied and dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 25, 2005, a Second Superceding Bill of Indictment was filed charging Petitioner and 36 other individuals with numerous drug trafficking and/or firearms offenses. (Case No. 5:05CR9-16, document # 265). In particular, Petitioner was charged with conspiring to possess with intent to distribute 50 grams or more of cocaine base, 5 kilograms or more of powder cocaine and 1,000 kilograms or more of marijuana, all in violation of 21 U.S.C. § 846 (Count One); and she was charged with three separate counts of possessing cocaine base with intent to distribute that drug, in violation of 21 U.S.C. § 841 (Counts Eight through Ten).

On March 1, 2006, Petitioner appeared before the Court to tender guilty pleas to the four charges she was facing. On that occasion, the Court engaged Petitioner in its standard, lengthy colloquy to ensure that she voluntarily and intelligently was tendering her pleas. After being placed under oath, Petitioner made statements which establish that she understood the nature of the proceeding, the charges she was facing and their corresponding penalties. Petitioner's answers further establish that she had discussed those matters and her rights to proceed to trial with her attorney; that she was voluntarily waiving those rights;

2

that she was tendering "straight-up" guilty pleas to the four charges because she, in fact, was guilty of those matters; and that she was satisfied with counsel's services. Also, as to the amount of drugs for which Petitioner was taking responsibility, defense counsel advised the Court that she "acknowledge[d] that she exceeds the level which would kick in the ten year minimum." (Plea and Rule 11 Tr., filed Feb. 14, 2008, 37). Accordingly, at the conclusion of that proceeding, the Court determined that Petitioner freely and knowingly was entering her guilty pleas, and the Court accepted the pleas. (Case No. 5:05CR9-16, document # 487: Entry and Acceptance of Guilty Plea form).

On December 18, 2006, the Court conducted Petitioner's Factual Basis and Sentencing Hearing. At the outset of that proceeding, Petitioner reaffirmed her earlier answers to the Court's questions, namely that she understood the nature of the charges and penalties, she pled guilty freely and voluntarily, she committed the subject offenses, and she was "fully satisfied" with the services of her attorney. (Sent'g. Tr., filed Feb. 28, 2007, 2-3). After hearing those answers, the Court reaffirmed its acceptance of Petitioner's guilty pleas. (Sent'g. Tr. 3).

Thereafter, defense counsel objected to the Pre-Sentence Report's recommendation that Petitioner be sentenced on the basis of involvement with 112 ounces of cocaine base -- that is, the full amount of cocaine base which was sold to co-conspirator

3

Anthony Brown by Petitioner and her lover, Brendon Steele, and to its recommendation that Petitioner be subject to a firearm enhancement. (Sent'g. Tr. 4).

According to the Pre-Sentence Report, Petitioner was part of a large-scale drug conspiracy involving hundreds of kilograms of cocaine and cocaine base and hundreds of pounds of marijuana. (Report dated July 27, 2006, 6). The conspiracy began in 1999, and primarily was led by Richard Eckles who operated the group in Harmony, North Carolina. Id.

Petitioner became involved in the conspiracy through her relationship with Brendon Steele, beginning in early 2000. (Id. at 9). Between 2000 and October 2004, Petitioner and Steele lived together and used Petitioner's home as a drug processing and distribution center. (Id.). Brown admitted that during the relevant period, he daily made purchases from Steele and Petitioner, totaling about ½ ounce of crack cocaine per week. (Id.). Brown told authorities that he dealt directly with Petitioner on 20% of those occasions; that he saw Steele in possession of firearms at Petitioner's residence; and that he saw Petitioner and Steele trade cocaine base for stolen property, such as guns and other items. (Id.).

The Report further indicates that Melissa Swaim bought cocaine base from Steele at Petitioner's residence from around 1999 up to 2003, receiving 1/8 of an ounce of crack on each transac-

tion. (Id.). Swaim told authorities that Steele used Petitioner's home to distribute his drugs; that Petitioner also sold drugs to Swaim when Steele was unavailable; and that Petitioner increased her drug sales to Swaim after another co-conspirator was sent to prison in 2003. (Id.).

Last, the Report states that investigators made several undercover drug purchases from Petitioner through an informant from July through December 2004; that the sales took place at Petitioner's residence; and that on one occasion, Petitioner quoted the informant a price for a full ounce of cocaine base. (Id. at 10).

However, defense counsel argued that the evidence upon which the Report relied established that Petitioner directly was involved with only 20% of the drugs which were sold to Brown; that the sales which Petitioner made to the confidential informant involved only about eight rocks of cocaine base; that only Brown had indicated that there were firearms in Petitioner's home; and that Brown's information identified Steele as the one who possessed the guns. (Sent'g. Tr. 4-6).

In rebuttal, the Government presented the testimony of Lieutenant David Ramsey from the Iredell County Sheriff's Department. (Sent'g. Tr. 6-7). Sheriff Ramsey's testimony essentially mirrored the information from Petitioner's Pre-sentence Report, namely that: (1) Petitioner and Steele were paramours who perio-

5

dically shared a residence between early 2000 and October 2004; (2) such residence served as a base of operation for on-going drug trafficking activities, including the cooking and distribution of cocaine base; (3) between 2000 and 2004, Brown purchased about ½ ounce of crack cocaine per week from Steele and/or Petitioner, with his deals with Petitioner accounting for 20% of those transactions; and (4) between 1999 and 2003, Swaim made regular purchases of 1/8 ounce-sized packages of cocaine base from both Steele and Petitioner at Petitioner's home. (Sent'g. Tr. 8-11).

In addition, however, Ramsey testified that: (1) quantities of crack cocaine routinely were maintained at Petitioner's home during the course of the conspiracy; (2) both Anthony Brown and Brendon Steele, himself, told authorities that firearms were kept at Petitioner's home; and (3) as many as five of Petitioner's other co-conspirators also identified her as a member of the conspiracy. (Sent'g. Tr. 8-11). On cross-examination, Ramsey testified that Brown reluctantly had admitted to having broken into Petitioner's home to rob a safe where he expected to find ounces of cocaine, but he actually found only "an eight-ball and a quarter ounce" of cocaine. (Sent'g. Tr. 11-12).

In summation, defense counsel asserted that Steele was not Petitioner's live-in boyfriend, but merely a lover with whom she had become involved after her husband was incarcerated and she

6

found herself unable to support herself and her child. (Sent'g. Tr. 13). Counsel further asserted that Petitioner lived next door to the primary members of the conspiracy; that she had become minimally involved in the conspiracy in order to support her family; that she did not acquire "any real assets" from her activities; and that Petitioner was a good mother. (Sent'g. Tr. 13-16). Consequently, defense counsel argued that Petitioner should not be held accountable for the entire 112 ounces of crack which were sold to Brown. (Sent'g. Tr. 16).

Nevertheless, after considering all of the information, the Court overruled Petitioner's objections, finding that she "was involved with at least one and a half kilos of crack. That is, that she either handled it or it was foreseeable to her based on the preponderance of the evidence as presented by the agent and the Pre-Sentence Report." (Sent'g. Tr. 16). The Court then affirmed the Pre-Ssentence Report's calculations, including its recommendation that Petitioner receive a two-level enhancement for Steele's possession of firearms at her home and/or for Steele and Petitioner's having traded drugs for weapons. (Sent'g. Tr. 16). Thus, the Court concluded that Petitioner's adjusted offense level was 37 and her criminal history category was II, with a resulting range of imprisonment of 235 to 293 months. (Sent'g. Tr. 16-17). Ultimately, the Court sentenced Petitioner to a term of 235 months imprisonment. (Sent'g. Tr. 17). The Court's Judg-

7

ment was filed January 9, 2007. (Case No. 5:05CR9-16, document # 668).

Petitioner timely appealed to the Fourth Circuit Court of Appeals. (Case No. 5:05CR9-16, document # 662). There, Petitioner argued that this Court erred in holding her accountable for the entire amount of drugs which were sold to Anthony Brown because Brown bought drugs directly from her only 20% of the time. United States v. Martin, 235 Fed. App'x 87, 88 (4th Cir. July 30, 2007). However, the appellate Court held, in reliance upon United States v. Fullilove, 388 F.3d 104, 106 (4th Cir. 2004), that this Court "did not clearly err in attributing more than 1.5 kilograms of crack to [Petitioner]." Id. at 88. The Fullilove case generally reinforces the Sentencing Guidelines' position that a defendant is accountable under relevant conduct principles for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" by him. Fullilove, 388 F.3d at 106-07, quoting U.S. Sentencing Guidelines § 1B1.3(a)(1)(A). In other words, the Fourth Circuit implicitly determined that Petitioner was responsible for the full amount of drugs sold to Brown because that amount reasonably was foreseeable to her. Consequently, Petitioner's sentence was affirmed. Martin, 235 Fed. App'x at 88.

Now, Petitioner has returned to this Court on the instant Motion to Vacate, arguing that her attorney was ineffective for

having failed to prevent her from being sentenced for the entire 112 ounces of crack; and that her sentence was imposed in violaion of Sentencing Guidelines Amendment 715, United States v. Booker, 543 U.S. 220 (2005), and certain other precedent.

## II. ANALYSIS

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed promptly to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief. The Court has conducted such a review and determined that Petitioner is not entitled to any relief on his claims; thus, neither a response from the government nor a hearing is required in this matter.

### A. Petitioner's challenge to her sentence is not cognizable.

Taking them out of turn, by her second claim, Petitioner essentially is claiming that her sentence is erroneous because Sentencing Guidelines Amendment 715 changed the method by which this Court must determine her combined offense level under § 2D1.1(D), and because the holdings from Kimbrough v. United States, 128 S.Ct. 558(2007) and certain other decisions[2] now

---

[2] In addition, Petitioner cites Watson v. United States, 128 S. Ct. 579, 586 (2007) (holding that the trading of drugs for a gun does not satisfy the "use" element of 18 U.S.C. § 924(c)); Blakely v. Washington, 542 U.S. 296, 303 (2004) (holding that for purposes of Apprendi, the statutory maximum term to which a defendant can be exposed is the "maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."); and United States v. Winston, 37 F.3d 235 (6th Cir. 1994)

9

require this Court to calculate her sentence in a manner which reduces the disparity between powder and crack cocaine sentences. However, this claim must fail.

First, Petitioner is correct that Amendment 715, which took effect on May 1, 2008, modifies the commentary to § 2D1.1 of the Guidelines so as to revise the manner in which combined offense levels are determined for convictions involving cocaine base and one or more other drugs. Chiefly, the Amendment permits a two-point offense level reduction for such calculations. Further, because Amendment 715 is listed in U.S. Sentencing Guidelines § 1B1.10(c), defendants who are affected by it can request retroactive application of the provision to their cases.

However, the proper means by which to seek a post-conviction application of the Amendment is by motion under 18 U.S.C. § 3582-(c), which provision grants district courts authority to reduce sentences pursuant to retroactively applicable amendments to the Sentencing Guidelines. Indeed, Petitioner has failed to point to a single case which stands for the proposition that district courts are authorized to apply Amendment 715 in a collateral context such as this one. Nor has this Court's independent research disclosed any such precedent. Therefore, Petitioner's claim for a reduced sentence under Amendment 715 is not cognizable in this

---

(vacating a life sentence imposed under 21 U.S.C. § 841(b)(1)(B) and finding that such statute imposes enhanced sentences for single violations involving at least 50 grams of crack, not for several violations involving less than that amount individually but totaling 50 grams or more when added together).

proceeding and must be brought pursuant to a motion for re-sentencing under 18 U.S.C. § 3582(c).

Similarly, although Kimbrough stands for the proposition that sentencing courts may, in their discretion, craft sentences in a way that takes into consideration the disparate punishment for cocaine base and powder cocaine offenses, the Supreme Court in Kimbrough did not state that its holding was to be retroactively applied in the collateral review context. See Kimbrough, supra; see also United States v. Lackey, 2008 WL 4133297, slip op. at 1 (M.D. Pa Sept. 3, 2008) (finding that Kimbrough "does not apply retroactively on collateral review."). Nor did the High Court state that Watson -- which is inapplicable here since Petitioner was not convicted under § 924(c) -- retroactively can be applied on collateral review. Consequently, the holdings from these two cases do not entitle Petitioner to any relief.

Furthermore, to the extent that Petitioner already directly has challenged her sentence on appeal, she now is procedurally barred from attempting to revisit that claim pursuant to the holding from Blakely. Indeed, Petitioner's earlier challenge to the calculation of her sentence likely stands as a procedural bar to her ability to re-litigate that matter. See Davis v. United States, 417 U.S. 333, 342 (1974) (in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims

which already were rejected on direct review); Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976) (same).

Or, in the alternative, Petitioner's failure on appeal to challenge her convictions and/or sentences under Blakely and the Sixth Circuit's opinion in Winston, constitutes a procedural default of those arguments, which default she has not even attempted to overcome. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) ("[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack"); United States v. Frady, 456 U.S. 152 (1982) (same); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same). In sum, therefore, Petitioner's second claim must be rejected in its entirety.

### 2. **Petitioner's claim against counsel also must fail**.

By her other claim, Petitioner alleges that counsel was ineffective for having failed to prevent her from being sentenced on the basis of the entire 112 ounces of cocaine base which was sold to Anthony Brown by her and Brendon Steele. In support of

12

this claim, Petitioner first points to her co-conspirator/co-defendant White, whose attorney limited her role by stipulating to involvement with 50 to 150 grams of cocaine base, and she points to Defendant Dalton, whose attorney preserved his right to a jury determination of the relevant drug amount for him. Petitioner suggests that her attorney should have taken one of those two approaches in order to protect her from being sentenced for involvement with 112 ounces. Second, Petitioner reiterates a portion of her appellate argument in that she contends counsel was ineffective for having allowed her to be sentenced on the basis of the full 112 ounces when she was involved with only 20% of those sales to Brown.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977).

Under these circumstances, Petitioner "bears the burden of

proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697. Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u>, <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

More critically, inasmuch as Petitioner has alleged ineffective assistance of counsel following the entry of her guilty plea, she has a different burden to meet. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 53-59; <u>Fields</u>, 956 F.2d at 1294-99; <u>and</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described a petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lock-</u>

14

hart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297.  Critically, however, if a petitioner fails to meet his burden of demonstrating prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977).  Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Blackledge, 431 U.S. at 73-74.  In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167 (4th Cir. 1981).

In the instant case, Petitioner complains that counsel should have negotiated a structured plea agreement for her, either containing a stipulation to involvement with a lower drug amount, or reserving her right to a jury trial on the question of drug quantity.  Such negotiations, however, necessarily would

15

have taken place _prior_ to the time that Petitioner entered her guilty pleas. Notwithstanding the absence of such an agreement, Petitioner still chose to plead guilty, and she even told the Court that she was satisfied with counsel's services on two separate occasions.

In this case, therefore, the well-settled principle of waiver is applicable to this allegation. That is, the law is clear that a "voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations," Fields, 956 F.2d at 1294, citing Tollett v. Henderson, 411 U.S. 258, 266-67 (1973). Therefore, Petitioner's argument that counsel was ineffective for having failed to engage in certain pre-plea negotiations must fail.

Furthermore, Petitioner's argument that counsel was ineffective for failing to protect her from being sentenced for more than 20% of the cocaine base which was sold to Brown also must be rejected. To be sure, the Court of Appeals already has upheld this Court's determination that the principles of reasonable foreseeability subjected Petitioner to sentencing for the drugs which both she and her lover (Steele) sold to Brown. See Martin, 235 Fed. App'x at 88. Thus, Petitioner is procedurally barred from re-litigating that matter.

Nor can Petitioner prevail on her argument that counsel should have done more to clarify for the Court that Steele also

16

sold cocaine base from a location other than her home; therefore, she should not have been held accountable for all of the drugs which Steele sold. Rather, the record clearly shows that the 112-ounce total which was used to calculate Petitioner's sentence is the total amount of cocaine base which Brown admitted to having purchased from Steele and Petitioner in Petitioner's home. Thus, even if Steele made additional sales of cocaine base to Brown from another location, such additional sales were <u>not</u> attributed to Petitioner. Thus, Petitioner cannot establish that she was prejudiced by counsel's handling of the subject information.

### III. <u>CONCLUSION</u>

The Court has considered Petitioner's Motion, the entire record of this matter and the relevant legal precedent, and has found that Petitioner is not entitled to any relief on her claims as stated in this Motion to Vacate.

### IV. <u>ORDER</u>

**IT IS, THEREFORE, ORDERED THAT:**

1. Petitioner's Motion for Extension of Time is **DISMISSED as moot;** and

2. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: January 21, 2009

Richard L. Voorhees
United States District Judge